## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| LYNDA H. HERNANDEZ, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-04-2630 |
| | § | |
| OFFICE DEPOT, INC., | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Pending before the Court is Defendant Office Depot, Inc.'s ("Office Depot")

Motion for Complete Summary Judgment ("Motion") [Doc. # 9].[1]  Plaintiff Lynda H.

Hernandez ("Hernandez") has filed a Response in opposition ("Response") [Doc. # 10],

and Office Depot has filed a Reply ("Reply") [Doc. # 11].  The Motion is ripe for

decision.  Based on a careful review of the full record in this case and the governing

legal authorities, the Court concludes that Defendant's Motion should be **granted**.

## I.    FACTUAL BACKGROUND

This employment dispute arises out of Plaintiff's termination from Office Depot

and from incidents that may have occurred during Plaintiff's thirteen-year employment

there.  Plaintiff worked full-time as a cashier at Office Depot from October 15, 1990,

---

[1]    Plaintiff originally filed suit against Office Depot in the 333rd Judicial District Court in Harris
County on May 14, 2004.  Office Depot timely removed the action to this Court based on
diversity jurisdiction on July 7, 2004 [Doc. # 1].

until her termination on February 5, 2004.  Over the course of her employment, Plaintiff held different cashier-level positions until she became a lead cashier, the position she held at the time of termination.  Motion, Ex. A, at 33–35.  Office Depot employed Plaintiff on an at-will basis.  After she was terminated, Plaintiff filed suit against Office Depot alleging assault; intentional infliction of emotional distress ("IIED"); negligent hiring, supervision, and retention; and wrongful discharge. Plaintiff seeks to recover actual damages, damages for mental anguish, and punitive damages.

Many of Plaintiff's complaints about her treatment at Office Depot relate to Defendant's accommodation of her diabetic condition.  Plaintiff was diagnosed with Type 1 diabetes when she was six years old.  During the time of her employment with Office Depot, Plaintiff's disease required that she give herself an insulin shot twice a day.  *Id*. at 24–25.  It was also necessary for Plaintiff to eat meals and snacks on a regular basis in order to regulate her blood sugar level.  *Id*. at 66.  During the course of her employment, Plaintiff worked a variety of shifts at Office Depot, sometimes 8:00 a.m. to 5:00 p.m., sometimes 9:00 a.m. to 6:00 p.m., and sometimes 1:00 p.m. until the store closed around 9:00 p.m..  Plaintiff preferred, however, to work the 8:00 to 5:00 shift because it more easily facilitated the maintenance of her blood sugar levels.  *Id*. at 67.

At some unspecified time during her employment, Plaintiff submitted to Office Depot a note from her diabetes doctor, Dr. Zaniewski, stating that she needed to eat lunch every day at noon due to her diabetes. *Id*. at 78–80. Plaintiff testified she does not recall having a problem being scheduled for lunch at noon after she gave management the doctor's note. *Id*. at 80.

Plaintiff gave management another note from Dr. Zaniewski dated March 4, 1996, stating that she needed to eat on a set schedule, that she may require snacks throughout the day, and that she needed to take insulin injections. *Id*. at 80–87. Plaintiff brought the note to work because management had allegedly denied her permission to eat snacks when she needed them, and because an unidentified female manager had asked Plaintiff to administer her injections in a stall in the bathroom. The female assistant manager had allegedly become sick after observing Plaintiff administer a shot in the break room. Plaintiff became concerned about the safety of giving herself a shot in the toilet area because of the possibility of getting an infection. *Id*. at 166–69. After receipt of the 1996 letter, Office Depot set Plaintiff's work schedule from 8:00 to 5:00 so that she was able to take her injections at home. *Id*. at 87–88. Plaintiff was satisfied with Office Depot's response at that time.

Plaintiff subsequently gave to management a letter from Dr. Zaniewski dated August 11, 1997, stating that she needed to be able to eat or drink at any time. After

this letter, Plaintiff was permitted to have drinking water at her cashier station.  *Id*. at 91–92.

On June 14, 2000, Mark Schroeder ("Schroeder") became store manager of the Office Depot where Plaintiff was employed.  Motion, Ex. B.  Plaintiff alleges that Schroeder did not accommodate her medical needs.  According to Plaintiff, around 2001, Schroeder began scheduling Plaintiff on the night shift from 1:00 p.m. to 9:00 p.m., which caused her much stress and anxiety, and caused problems controlling her blood sugar.  Motion, Ex. A, at 90–91, 93–94.  This new schedule sometimes required Plaintiff to eat lunch at 3:00 p.m., and as a result she would sometimes become sick and have to leave work early.  *Id*. at 90.  At other times, Schroeder scheduled Plaintiff for lunch at 5:00 p.m.  For the 5:00 lunch, she would frequently go home to eat and take her shot, and was sometimes unable to return to work because she was vomiting due to high blood sugar.  *Id*. at 89.  As a result of this stress, Plaintiff was depressed during the time Schroeder was store manager.  *Id*. at 99.

On January 24, 2001, Plaintiff was admitted to the emergency room unable to breathe and suffering from a panic attack.  The hospital issued to her a note indicating that she was not to return to work until February 1, 2001.  Response, Ex. 5.

Plaintiff gave Schroeder a letter from Dr. Zaniewski dated February 12, 2001 stating that she was unable to work the night shift as her blood sugar levels were very

high following her injections.  The letter authorized Plaintiff to work only the day shift due to her medical condition.  Response, Ex. 5.  Plaintiff also submitted a February 14, 2001 note from Dr. Zaniewski stating that Plaintiff "is experiencing a significant amount of stress and clinical depression [which] affect her blood sugar control and cause her to be unable to perform at work."  Response, Ex. 6.  The February 14 note advises that Plaintiff refrain from work until February 28, 2001.  On February 16, 2001, Plaintiff forwarded her doctor's recommendations to Office Depot's human resources department, asking for their assistance because Schroeder continued to schedule her on the night shift despite her requests and health concerns.  Response, Ex. 7.  Plaintiff testified that management continued to schedule her for the night shift after she brought in the doctor's notes.  Motion, Ex. A, at 94.  During the period of February 2001 when Plaintiff was on the night shift, she suffered from significant stress and, according to her doctor, clinical depression.  Response, Ex. 6.  Plaintiff's depression continued throughout Schroeder's tenure as store manager.  Motion, Ex. A, at 99.

Plaintiff wrote a letter to Schroeder dated April 3, 2001, expressing her unhappiness with her erratically scheduled hours because of their effect on her eating and injections.  Motion, Ex. A, at 100–01.  Again, there was no change in Plaintiff's work schedule after this letter.  *Id*. at 105.

At some point while Schroeder was store manager, Plaintiff submitted an employee availability sheet, on which she indicated her availability to work days and nights, Monday through Saturday.[2]  *Id*. at 114–15; *see also* Motion, Ex. B, attachment 6.  Plaintiff testified, however, that she agreed in the form to work nights only because Schroeder forced her to chose between working part-time (which would cause her to lose her health insurance) and making herself openly available in order to be scheduled on enough shifts to work full-time.  Motion, Ex. A, at 115–16.

Plaintiff also asserts a separate claim that she was assaulted by co-worker Evelyn Tymes ("Tymes"), an associate in the furniture department, on November 2, 2002. Plaintiff contends that Tymes came over to her cashier station after Plaintiff had unsuccessfully tried to locate a customer's tax-exempt number, and while Plaintiff was assisting the next customer, Tymes slapped her in the face.  Tymes allegedly told Plaintiff, "You were doing it wrong."  *Id*. at 51–53.  Plaintiff reported the incident to David Pearson, the assistant manager on duty, and "Crystal," her direct supervisor on that shift.  *Id*. at 50–51.  Both Plaintiff and Tymes were written up for the incident.

Plaintiff also complains of rude treatment by management.  Plaintiff generally alleges that Schroeder intentionally caused her to suffer from stress, was rude to her, raised his voice, and embarrassed her in front of co-workers and customers.  *Id*. at

---

[2]       This form is not dated.

117, 120–21.  Plaintiff contends Schroeder was cruel to her and to the majority of the associates, and that he would belittle her in front of co-workers and customers. Plaintiff testified there were about five or six incidents in which Schroeder embarrassed her in front of other people.  *Id*. at 172–73.

Schroeder was later replaced as store manager by Jerry Cutrone ("Cutrone"). Cutrone scheduled Plaintiff primarily on day shifts, but she continued to work nights about twice a week.  *Id*. at 142–43.  Charles Reed ("Reed") then replaced Cutrone as store manager around December 2003.

Under Reed's management, Plaintiff received performance improvement process reports on December 15, 2003 and January 5, 2004.  Motion, Ex. B, attachments 2-3. The reports cited her below-standard performance as a cashier.  The reports listed the several dates she was counseled on the job, and gave her a warning period in which to improve.  Plaintiff also had a discussion with management on January 23, 2004 about her continued failure to meet cashier performance standards.  Motion, Ex. B, attachment 4.  Shortly following the discussion, a  February 5, 2004 report called for her immediate termination.  Motion, Ex. B, attachment 5.  Plaintiff admits she made mistakes, but claims she did so only because the assistant managers were "hovering over her" and not letting her do her job.  Motion, Ex. A, at 147–48.  Plaintiff claims

Reed was trying to "get rid" of her and was making up excuses to write her up.  *Id*. at 144–45, 153.

After her termination, Plaintiff brought this lawsuit asserting claims for assault; IIED; negligent hiring, supervision, and retention; and wrongful termination. Defendant Office Depot now moves for summary judgment on all claims.

## II.    STANDARDS FOR MOTION FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure requires the entry of summary judgment, after an adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial.  *Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).   In deciding a motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P.  56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986);*Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003).  An issue is material if its resolution could affect the outcome of the case.  *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.,* 290 F.3d

303, 310 (5th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).  In deciding whether a fact issue has been created, the facts and the inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party.  *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co. ,* 336 F.3d 410, 412 (5th Cir. 2003).   However, factual controversies are resolved in favor of the nonmovant "only when there is an actual controversy – that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir. 1999).

The party moving for summary judgment has the initial burden of demonstrating the absence of a material fact issue with respect to those issues on which the movant bears the burden of proof at trial.  *Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir. 1998).  If the movant meets this burden, the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial.  *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (quoting *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1998)).   A dispute over a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Id*. (quoting *Smith*, 158 F.3d at 911); *see also Quorum Health Resources, L.L.C. v. Maverick County Hosp. Dist.*, 308 F.3d 451, 458 (5th Cir. 2002).

The nonmovant's burden is not met by mere reliance on the allegations or denials in the nonmovant's pleadings. *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002) (noting that "unsworn pleadings do not constitute proper summary judgment evidence"). Likewise, "unsubstantiated or conclusory assertions that a fact issue exists" do not meet this burden. *Morris v. Covan Worldwide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998). Instead, the nonmoving party must present specific facts which show "the existence of a 'genuine' issue concerning every essential component of its case." *Id.* In the absence of any proof, the court will not assume that the nonmovant could or would prove the necessary facts. *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *revised on other grounds upon denial of reh'g*, 70 F.3d 26 (5th Cir. 1995); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

## III.   **ASSAULT**

Office Depot argues that it may not be held vicariously liable for Tymes's alleged assault of Plaintiff because the assault was not within the scope of Tymes's authority or in furtherance of Office Depot's business. Office Depot further contends that Plaintiff's assault claim is barred by the Texas Workers' Compensation Act ("TWCA"). Plaintiff contends that Office Depot can be held vicariously liable for her

co-worker's assault because the conduct falls within the intentional tort exception to the exclusive remedy provision of the TWCA.  The Court first addresses Office Depot's potential vicarious liability and then turns to the exclusive remedy provisions of the TWCA.

### A.    Vicarious Liability

In order for Office Depot to be held vicariously liable for Tymes's alleged assault of Plaintiff, the assault must "fall within the scope of the general authority of the employee in furtherance of the employer's business and for the accomplishment of the object for which the employee was hired."  *See Kelly v. Stone*, 898 S.W.2d 924, 927 (Tex. App.– Eastland 1995, no writ); *see also Palmer v. Flaggman*, 93 F.3d 196, 199 (5th Cir. 1996) (citing *Robertson Tank Lines, Inc. v. Van Cleave*, 468 S.W.2d 354, 359 (Tex. 1971)).  "It is not ordinarily within the scope of an employee's authority to commit an assault on a third person," because "assault is usually the expression of personal animosity and is not for the purpose of carrying out the employer's business." *Kelly*, 898 S.W.2d at 927 (citing *Texas & P. Ry. Co. v. Hagenloh*, 247 S.W.2d 236, 237 (Tex. 1952)); *see also Buck v. Blum*, 130 S.W.3d 285, 288 (Tex. App.– Houston [14th Dist.] 2004, no pet. h.).

There is no evidence in the record to indicate that Tymes was in a supervisory role over Plaintiff, or that she slapped Plaintiff in furtherance of her position with

Office Depot or for the accomplishment of the object for which she was hired.  To the contrary, Plaintiff testified that Tymes was a fellow Office Depot associate, a co-worker who worked in the furniture department, and that David Pearson and Crystal were the only supervisors on duty when the alleged assault occurred.  Motion, Ex. A, at 50–51.  Tymes's alleged vague personal opinion expressed immediately after the assault, "You did it wrong," does not establish that the assault was within the scope of her employment or in furtherance of Office Depot's business.  Because Tymes's assault on Plaintiff was not within Tymes's general authority and falls outside the course and scope of her employment, Tymes's conduct may not be imputed to Office Depot.

### B.  Exclusive Remedy Provisions of Texas Workers' Compensation Act

Office Depot alternatively contends that Plaintiff's assault claim is barred as a matter of law by the TWCA.  The TWCA provides: "Recovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage . . . against the employer or an agent or employee of the employer for . . . a work-related injury sustained by the employee." TEX. LAB. CODE § 408.001.  Office Depot subscribed to workers' compensation insurance for its employees in Texas throughout the duration of Plaintiff's employment, Motion, Ex. B, at ¶ 9, so the Court must determine whether the TWCA bars Plaintiff's assault claim.

Although the Texas Supreme Court has not resolved the issue of when an employer can be held vicariously liable for an employee's intentional acts under the intentional tort exception to the TWCA, the Houston Court of Appeals has concluded that the exception should apply only if the "'assailant is, by virtue of control or ownership, in effect the alter ego of the corporation,' or where the corporate employer specifically authorizes the assault." *See Urdiales v. Concord Tech. Delaware, Inc.*, 120 S.W.3d 400, 406 (Tex. App.– Houston [14th Dist.] 2003, pet. denied) (citing *Medina v. Herrera*, 927 S.W.2d 597, 601 (Tex. 1996) (citing 2A LARSON, THE LAW OF WORKMEN'S COMPENSATION §§ 68.00, 68.21 (1990))).  In dismissing an employee's claim against his employer for a supervisor's assault, the *Urdiales* court explained:

> It would disturb the balance the Workers' Compensation Act achieved if we allowed an employee, injured by the intentional tort of a co-employee, to sue and recover from their employer simply because the tort was committed (1) at work (2) by an employee of the company.  Something more must be present to bring the case within the intentional injury exception.  *See Medina*, 927 S.W.2d at 601; *see also Prescott* [*v. CSPH, Inc.*,] 878 S.W.2d [692] at 695 [(Tex. App.–Amarillo 1994, writ denied)] (intentional tort exception is narrow; for employer to be held liable for employee's act, employer must have hired employee intending that employee injure another).

120 S.W.3d at 407.  There is no evidence on the record to suggest that Tymes's alleged assault on Plaintiff was a part of her job duties, that she was the alter ego of the corporation by control or ownership, or that Office Depot authorized the assault.  Tymes's statement, "You did it wrong," made when she slapped Plaintiff, is merely her

personal opinion and is insufficient to establish Tymes was "by virtue of control or ownership, in effect the alter ego of the corporation," or that Office Depot "specifically authorize[d]" such conduct.  *Id.* at 406.  Moreover, in *Urdiales*, a supervisor was found to not be the alter ego of the company.  *Id.* at 407.  Thus, it is clear that Tymes, a co-worker who was not even a supervisor, cannot be considered the alter ego of Office Depot.  As there is no genuine factual dispute about whether Tymes can be considered the alter ego of Office Depot, and no evidence that Office Depot authorized the assault, the assault does not fall under the intentional tort exception to the TWCA. The Court concludes that Plaintiff's assault claim is barred as a matter of law by the TWCA.

## IV.    INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

As Office Depot outlines in its Motion, Plaintiff's deposition testimony reveals five complaints that form the basis of her IIED claim: (1) store manager Schroeder's attitude toward her; (2) Schroeder's scheduling her on the night shift instead of the day shift; (3) an unidentified assistant store manager's alleged request for Plaintiff to take her insulin injection in the restroom rather than the break room; (4) the alleged assault by Tymes; and (5) the circumstances regarding Plaintiff's termination of employment with Office Depot.  Motion, Ex. A, at 173.  In her Response, Plaintiff relies primarily on the assault and on Office Depot's alleged failures to accommodate Plaintiff's efforts

to control her diabetes.  Office Depot contends that the acts Plaintiff complains of do not constitute "extreme and outrageous" conduct sufficient to support an IIED claim, and that there is no evidence that Plaintiff's emotional distress was sufficiently severe.

## A.      Standards for an IIED Claim

"An employee may recover damages for intentional infliction of emotional distress in an employment context as long as the employee establishes the elements of the cause of action." *GTE Southwest, Inc. v. Bruce,* 998 S.W.2d 605, 611 (Tex. 1999) (citing *Wornick Co. v. Casas*, 856 S.W.2d 732, 734 (Tex. 1993)).[3]  In order to recover damages for IIED, a plaintiff must prove four requirements: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress and; (4) the resulting emotional distress was severe.  *See Hughes Training Inc. v. Cook*, 254 F.3d 588, 594 (5th Cir. 2001); *Hirras v. National R.R. Passenger Corp.*, 95 F.3d 396, 400 (5th Cir. 1996); *MacArthur v. University of Texas Health Center*, 45 F.3d 890, 898 (5th Cir. 1995); *Danawala v. Houston Lighting & Power Co.*, 14 F.3d 251, 256 (5th Cir. 1993); *GTE Southwest,* 998 S.W.2d at 611; *Twyman v. Twyman*, 855 S.W.2d 619, 621-22 (Tex.

---

[3]      IIED claims are not preempted by the Texas Workers' Compensation Act (TWCA).  *See GTE Southwest, Inc.*, 998 S.W.2d at 611 (holding claims for intentional infliction of emotional distress are not barred under the TWCA because they do not involve injuries that are compensable under the statute).

1993).  A claim for IIED will not lie if the intent or primary consequence of the defendant's conduct was not emotional distress.  *GTE Southwest*, 998 S.W.2d at 611.  "'Ordinary employment disputes' will not support a claim for intentional infliction of emotional distress" because the conduct complained of is not sufficiently extreme and outrageous.  *Hughes Training Inc.*, 254 F.3d at 594 (citing *GTE Southwest*, 998 S.W.2d at 612).  The Texas Supreme Court has explained that

> The range of behavior encompassed in "employment disputes" is broad, and includes at a minimum such things as criticism, lack of recognition, and low evaluations, which although unpleasant and sometimes unfair, are ordinarily expected in the work environment.  Thus, to establish a cause of action for intentional infliction of emotional distress in the workplace, an employee must prove the existence of some conduct that brings the dispute outside the scope of an ordinary employment dispute and into the realm of extreme and outrageous conduct.

*GTE Southwest*, 998 S.W.2d at 613 (citations omitted).  As such, "extreme conduct exists only in the most unusual of circumstances" in employment disputes.  *Id.*

Texas courts have adopted a strict approach to IIED claims in the workplace.  "In the employment context, Texas courts have found few incidents to constitute extreme and outrageous conduct."  *Walker v. Thompson*, 214 F.3d 615, 628 (5th Cir. 2000) (citing *Horton v. Montgomery Ward & Co.*, 827 S.W.2d 361, 369 (Tex. App.– San Antonio 1992, writ denied)).  Texas courts recognize that "to properly manage its business, an employer must be able to supervise, review, criticize, demote, transfer, and discipline employees."  *GTE Southwest*, 998 S.W.2d at 612.  "Although many of

these acts are necessarily unpleasant for the employee, an employer must have latitude to exercise these rights in a permissible way, even though emotional distress results." *Id.* "There is no litmus test for outrageousness; whether conduct was outrageous and extreme must be analyzed on a case-by-case basis." *Id.* (citing *Skidmore v. Precision Printing and Packaging, Inc.*, 188 F.3d 606, 613 (5th Cir. 1999)).

To be extreme and outrageous, conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *GTE Southwest,* 998 S.W.2d at 611 (citing *Natividad v. Alexsis, Inc.,* 875 S.W.2d 695, 699 (Tex. 1994) as quoting *Twyman*, 855 S.W.2d at 621 (quoting RESTATEMENT (SECOND) OF TORTS § 46 (1965))); *accord Hughes Training Inc.*, 254 F.3d at 594; *MacArthur*, 45 F.3d at 898.[4] *Compare Brewerton v. Dalrymple,* 997 S.W.2d 212, 216 (Tex. 1999)). As such, "insensitive or even rude behavior does not constitute extreme and

---

[4] *See Burden v. General Dynamics Corp.*, 60 F.3d 213 (5th Cir. 1995) (summary judgment for employer on claim of intentional infliction of emotional distress affirmed, rejecting Plaintiff's allegations that, despite his excellent job performance, he suffered humiliation and health problems when he was reclassified to an isolated position, he was given no input into critical management decisions, he was ostracized and given menial assignments, and his office and secretary were taken away); *Johnson v. Merrell Dow Pharmaceuticals, Inc.*, 965 F.2d 31 (5th Cir. 1992) (summary judgment for employer on claim of intentional infliction of emotional distress affirmed, despite allegations that Plaintiff was told that he did not "fit in" with the company, and that his supervisor was extremely hostile, constantly criticized him, threatened him with termination, reassigned his sales territory and removed a sale from his credits). *Cf. Ugalde v. W.A. McKenzie Asphalt Co.*, 990 F.2d 239, 243 (5th Cir. 1993) (calling employee "Mexican" or "wetback" does not support claim for intentional infliction of emotional distress).

outrageous conduct." *GTE Southwest*, 998 S.W.2d at 611.  "Similarly, mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities do not rise to the level of extreme and outrageous conduct."  *Id.* at 612.  To meet the severe emotional distress prong of an IIED cause of action, the plaintiff must prove his distress is "so severe that no reasonable person could be expected to endure it." *GTE Southwest*, 998 S.W.2d at 618 (citing *Washington v. Knight*, 887 S.W.2d 211, 216 (Tex.App.– Texarkana 1994, writ denied)).  "Emotional distress includes all highly unpleasant mental reactions such as embarrassment, fright, horror, grief, shame, humiliation, and worry." *Id.*

### B.  <u>Extreme and Outrageous Conduct</u>

Office Depot contends that Plaintiff has not met the high threshold of culpability required to establish that Office Depot's conduct was extreme and outrageous.  It is for the Court to determine, in the first instance, whether Defendant's alleged conduct was extreme and outrageous; if reasonable minds would differ, it is for the jury to decide whether the conduct was sufficient to trigger liability.  *See GTE Southwest*, 998 S.W.2d at 616.  "To establish a cause of action for intentional infliction of emotional distress in the workplace, an employee must prove the existence of some conduct that brings the dispute outside the scope of an ordinary employment dispute and into the realm of extreme and outrageous conduct."  *Id.* at 617 (finding the severity and regularity of a

supervisor's abusive and threatening conduct, including cursing, screaming, yelling in employees' faces, and lunging at and threatening them, made it extreme and outrageous, and that his "ongoing acts of harassment, intimidation, and humiliation and his daily obscene and vulgar behavior . . . went beyond the bounds of tolerable workplace conduct").

The Court concludes that Office Depot's conduct cannot reasonably be found to be so extreme and outrageous as to permit Plaintiff's recovery.  First, as stated above, Tymes's alleged assault on Plaintiff was not within her general authority and falls outside the course and scope of her employment, and therefore may not be imputed to Office Depot.  Thus, Plaintiff cannot rely on the alleged assault to support her IIED claim against Defendant.  Aside from the alleged assault, most of the conduct Plaintiff complains of constitutes ordinary employment disputes insufficient to establish extreme and outrageous conduct.  Ordinary employment disputes, which may include rough language, rude behavior, and inconsiderate acts, are not outrageous.  *See Horton*, 827 S.W.2d 361, 369 (Tex. App.–San Antonio 1992, no writ).  Schroeder's management style, Plaintiff's being scheduled to work the night shift or weekends, the assistant manager's request that Plaintiff take her injections in the restroom, and the events surrounding Plaintiff's termination, are *not* conduct "outside the scope of an ordinary employment dispute and in[side] the realm of extreme and outrageous

conduct." *See id.* Condemnable conduct in the employment context is not necessarily extreme and outrageous behavior. *See Ugalde v. W.A. McKenzie Asphalt Co.,* 990 F.2d 239, 243 (5th Cir. 1993) (noting that although it is condemnable for a supervisor to use ethnic slurs against an employee a few times, it is not sufficient to establish extreme and outrageous conduct to support an IIED claim).

This case clearly does not involve the repeated, abusive behavior of severe harassment that evaluated as a whole goes "beyond the boundaries of tolerable workplace conduct." *See GTE Southwest*, 998 S.W.2d at 616–17 (affirming that "when repeated or ongoing severe harassment is shown, the conduct should be evaluated as a whole in determining whether it is extreme and outrageous"). Plaintiff identified five or six incidents in which Schroeder embarrassed her in front of customers and employees. This evidence does not constitute repeated abusive behavior of the severity to meet the Texas courts' standard. Although Schroeder's supervision of Plaintiff may have been rude, on occasion he raised his voice, and he scheduled Plaintiff on the night shift contrary to her preference, such "insensitive or even rude behavior does not constitute extreme and outrageous conduct." *GTE Southwest*, 998 S.W.2d at 611; *see also Shaboon v. Duncan*, 252 F.3d 722, 734 (5th Cir. 2001) (stating "ill-motivated actions do not constitute legally actionable infliction of emotional distress"); *McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 564 (5th Cir.

1998) (holding that employer who said he would "no longer tolerate [the employee's] health problems," excluded her from meetings, and ignored her, did not act outrageously, and noting that even if he was "in fact generally cruel, unfair, and threatened to fire her, this does not pass muster as the type of utterly indecent, intolerable, and atrocious behavior necessary to prevail on an intentional infliction of emotional distress claim").

Plaintiff's complaints about her schedule and her termination amount to common and ordinary employment disputes; as such, these complaints do not allege extreme and outrageous behavior.[5]

Plaintiff avers that supervisors spent a lot of time observing her performance, put pressure on her, and caused her to make mistakes. This conduct is not extreme and outrageous. An employer must be able "to properly manage its business" and "be able to supervise, review, criticize, demote, transfer, and discipline employees . . . even though emotional distress results." *GTE Southwest, Inc.*, 998 S.W.2d at 612. Although the unidentified assistant manager's request that Plaintiff take her insulin injections in the bathroom may be somewhat out of the ordinary and insensitive, the request is not extreme or outrageous under the applicable legal standard. Other than the assistant manager's arguably inappropriate request, there is no evidence that Office

---

[5]   Indeed, the record reveals that Office Depot at times accommodated Plaintiff's need to eat and drink water to maintain her blood sugar levels after Plaintiff provided management with doctor's notes.

Depot denied Plaintiff an accommodation to take her required injections. Significantly, following the assistant manager's comment, Plaintiff was switched to the day shift (apparently for years) to allow her to take her medicine at home.

A closer question is Office Depot's continued scheduling of Plaintiff on the night shift after their receipt of her doctor's notes in February 2001 advising that she should only work the day shift due to her diabetic condition.  "An employer's conduct may be considered extreme and outrageous if the employer knew that the employee was 'peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity.'" *Hughes Training,* 254 F.3d at 595 (citing *Fields v. Teamsters Local Union No. 988*, 23 S.W.3d 517, 532 (Tex. App.– Houston [1st Dist.] 2000, pet. denied)).   However, in writing, Plaintiff made herself available to work both days and nights.  Thus, scheduling Plaintiff to work the night shift is not extreme and outrageous.[6]  Although Schroeder and management may have been insensitive to the Plaintiff's diabetic condition, their actions were not "beyond all possible bounds of decency," "atrocious," or "utterly intolerable." *GTE Southwest,* 998 S.W.2d at 611.[7]

---

[6]     Plaintiff's contention that she only made herself available for both days and nights only because Schroeder said the other alternative was to switch to part-time is unpersuasive.  As discussed *supra,* employers have wide latitude in managing employees, and this discretion includes the management's ability to require an employee's flexibility in scheduling in order to give them enough shifts to quality as full-time.

[7]     If anything, the issues related to Plaintiff's diabetes may have supported a claim under the Americans With Disabilities Act ("ADA").  Such a claim is not asserted in this case and it is far too late to amend the complaint.  In any event, it is unclear whether Plaintiff could have
(continued...)

The events of which Plaintiff complains do not, taken in totality, provide support sufficient to support a jury verdict on her IIED claim.[8]  Plaintiff has thus failed to establish that Office Depot's conduct was extreme and outrageous so as to permit recovery.[9]  The Court accordingly grants summary judgment for Defendant as to Plaintiff's IIED claim.

## V.      Negligence and Wrongful Termination Claims

Plaintiff's Petition further alleges wrongful termination and negligent hiring, supervision, and retention.  Office Depot moved for summary judgment on these claims.  Plaintiff's Response did not address Office Depot's summary judgment arguments in this regard.  Those claims are therefore deemed abandoned.  In any

---

[7]      (...continued)
established an ADA claim.  *See Toyota Motor Mfg. v. Williams,* 534 U.S. 184 (2002); *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 482-83 (1999); *Arrington v. Southwestern Bell Telephone Co.,* 93 Fed. Appx. 593, 597-98 (5th Cir. 2004) (and cases cited therein); *see also Equal Employment Opportunity Comm'n v. Sears, Roebuck & Co.,* — F.3d —, 2005 WL 1875729 (7th Cir. Aug. 10, 2005).

[8]      The instant case is distinguishable from the cases relied on by Plaintiff in her response, *Dean v. Ford Motor Credit Co.*, 885 F.2d 300 (5th Cir. 1989) and *Hooper v. Pitney Bowes, Inc.*, 895 S.W.2d 773 (Tex. App.–Texarkana 1994, writ denied), because it does not involve an employer making false accusations of theft or character against the employee.  Notably, the Fifth Circuit held in *Dean v. Ford Motor Credit Co.* that the potential false accusation of theft made the employer's behavior outrageous, and without that incident the conduct was within the realm of an ordinary employment dispute that will not support an IIED claim.  885 F.2d at 307.  There is no comparable incident that takes Plaintiff's allegations of Office Depot's conduct out of an ordinary employment dispute for the purposes of an IIED claim.

[9]      Office Depot also argues that Plaintiff's claim of IIED fails because Plaintiff has not presented evidence that she suffered emotional distress "so severe that no reasonable person could be expected to endure it."  *GTE Southwest*, 998 S.W.2d at 618.  The Court does not reach this fact-intensive issue.

event, because Office Depot subscribed to workers' compensation insurance in Texas during Plaintiff's employment, and her claim is based on an alleged injury received in the course of her employment, the exclusive remedy provision of the TWCA bars Plaintiff's recovery on her negligent hiring, supervision, and retention claims.  *See Ward v. Bechtel Corp.*, 102 F.3d 199, 203 (5th Cir. 1997) (stating TWCA "provides the exclusive remedy for injuries sustained by an employee in the course of his employment as a result of his employer's negligence").

The Court further concludes that Plaintiff cannot establish a claim for wrongful termination because Plaintiff was an at-will employee and does not allege any statutory or judicially-created cause of action that is an exception to the at-will employment doctrine.  In addition, Plaintiff admits she made the mistakes that form the basis of Office Depot's reason for her termination.  *See Urdiales v. Concord Tech. Delaware, Inc.*, 120 S.W.3d 400, 407 (Tex. App.– Houston [14th Dist.] 2003, pet. denied) ("In the absence of an applicable statutory or judicially-created exception, an at-will employee may be terminated for good reason, a bad reason, or no reason at all.").  Summary judgment is granted on Plaintiff's wrongful termination and negligent hiring, supervision and retention claims.

## VI.    **CONCLUSION AND ORDER**

Plaintiff's claim for assault fails because Plaintiff's co-worker's assault cannot be imputed to Office Depot, and also because it is barred by the Texas Workers' Compensation Act .  Plaintiff's claim for intentional infliction of emotional distress fails because the acts alleged, even if true, do not meet the legal standard for extreme and outrageous behavior by Defendant.  Plaintiff's negligence claims are barred by the Texas Workers' Compensation Act.  Plaintiff has no claim for wrongful termination because she was an at-will employee.  Thus, all Plaintiff's claims fail as a matter of law.  It is therefore

**ORDERED** that Defendant's Motion for Complete Summary Judgment [Doc. # 9] is **GRANTED**.  The Court will issue a separate Final Judgment.

SIGNED at Houston, Texas, this **30th** day of **August, 2005**.

Nancy F. Atlas
United States District Judge